UNITED VAN LINES, Inc., Appellant,

v.

UNITED STATES of America, Appellee.

No. 15661.

United States Court of Appeals Eighth Circuit.

April 18, 1957.

G. M. Rebman, St. Louis, Mo. (B. W. La Tourette and La Tourette & Reb-

man, St. Louis, Mo., were with him on the brief), for appellant.

Harry F. Horak, Atty., Interstate Commerce Commission, Kansas City, Mo. (Harry Richards, U. S. Atty., and Herbert H. Freer, Asst. U. S. Atty., St. Louis, Mo., were with him on the brief), for appellee.

Before GARDNER, Chief Judge, WOODROUGH, Circuit Judge, and DONOVAN, District Judge.

GARDNER, Chief Judge.

This appeal is from a judgment convicting United Van Lines, Inc., a corporation, of violating an injunction which by its terms enjoined and restrained appellant from transporting in interstate commerce by motor vehicle on public highways for compensation, and engaging as a common carrier in the transportation of new furniture, shuffleboards, coin-operated roll-down machines, cafeteria and kitchen equipment, calculating machines and cash registers, or any other similar article or articles, when incidental to a sale or consignment from the consignor to the consignee, except that:

"Nothing herein contained shall be construed as prohibiting the transportation of said articles when moving as a part of the stock of a store, office, institution, hospital, or other establishment being moved from one location to another; nor the transportation of such articles if because of their unusual nature or value they require specialized handling and equipment usually employed in moving household goods; nor at such time, if at all, as there is in force with respect to said United Van Lines, Inc., a certificate of public convenience and necessity or other appropriate authority issued by the Interstate Commerce Commission authorizing such transportation."

At all times pertinent to the issues involved appellant was a motor common carrier of household goods and had a certificate of public convenience and necessity issued by the Interstate Commerce Commission authorizing it to transport in interstate commerce as defined in Practices of Motor Common Carriers of Household Goods, 17 M.C.C. 467.

The prosecution was initiated by the filing of a criminal information on behalf of the United States charging the appellant with criminal contempt in that it transported in interstate commerce, for hire as a common carrier, twelve shipments of kitchen cabinets, utility closets, linen closets, including new bases, wall cabinets and linen closet frames between January 1, 1953 and April 20, 1953, from Louisville, Kentucky to Cincinnati and Dayton, Ohio.

The proceeding was tried to the court without a jury. It was shown either by admission or affirmative proof that the appellant transported the shipments described in the information. Appellant contended in the trial court, and it renews that contention here, that this transportation did not violate the injunction because it was within the definition of household goods and also that it was of such a character that it required specialized handling.

The appellant moved for judgment of acquittal at the close of the government's case and renewed its motion at the close of all the evidence. These motions were denied by the court and the court entered the following, among other, findings:

"IV

"That during the period from January 2, 1953 to April 20, 1953, defendant transported twelve shipments of new kitchen cabinets, new kitchen cabinet sinks, new utility closets and new linen closets, from H. J. Scheirich Company, the shipper, at Louisville, Kentucky, to Warner-Kantner Corporation at Cincinnati and Dayton, Ohio; that these commodities were manufactured by the shipper to the specifications of the consignee for installation by the latter in F.H.A. housing projects being constructed by the

consignee at Cincinnati and Dayton; that these items were sold by the shipper to the consignee; that the establishments of these firms were not being moved from one location to another; that the consignee requested the shipper to ship the commodities uncrated; that the highest priced kitchen cabinet transported was valued at $112 but in most instances it was valued at $82; that the commodities, when tendered to defendant for transportation, were wrapped in Kraft paper; that the consignee desired the items be delivered or set down in the kitchen in which they were to be installed; and that furniture pads were used by the defendant during transit.

"V

"That the defendant, when performing the interstate transportation aforesaid, held a certificate of public convenience and necessity issued to it by the Interstate Commerce Commission on July 16, 1945, in Docket No. MC–67234 Sub. 1, authorizing the following operations:

Household goods as defined in Practices of Motor Common Carriers of Household Goods, 17 M.C. C. 467, over irregular routes

Between points and places in the United States and that it held no other operating authority from said Commission.

"VI

"That the new kitchen cabinets, new kitchen cabinet sinks, new utility closets, and new linen closets were not moving as a part of the stock of a store, office, institution, hospital, or other establishment, being moved from one location to another; that said commodities were not of such unusual nature or value so as to require the specialized handling and equipment usually employed in moving household goods; and that there was not in force, when said commodities were transported by defendant, a certificate of public convenience and necessity or other appropriate authority issued by the Interstate Commerce Commission to defendant authorizing such transportation.

"VII

"That the said commodities, transported by defendant, were incidental to a sale by the shipper, H. J. Scheirich Company, to Warner-Kantner Corporation for installation by the latter, not a householder, in F.H.A. housing projects being constructed by it.

"VIII

"That the defendant had full knowledge of the permanent injunction and transported the said twelve shipments in interstate commerce, as above described, in defiance of the terms of said injunction."

Based on the findings so entered the court concluded as a matter of law that the guilt of the appellant had been established beyond a reasonable doubt and thereupon entered judgment finding and adjudging appellant guilty of criminal contempt as charged in the information.

Appellant seeks reversal of the judgment on the following grounds: (1) that the involved transportation service was authorized service under appellant's certificate of convenience and necessity; (2) that even if appellant's operations herein were unlawful they did not violate the terms of the injunction; and (3) that the court erred in denying appellant's motion for judgment of acquittal.

The testimony showed without dispute that the kitchen cabinets and other items transported were new and that they were incidental to a sale from the consignor to the consignee, that neither the consignor nor the consignee were moving their places of business from one location to another and that in the twelve combination bills of lading and freight bills issued by appellant to the consignor, evidencing the twelve shipments involved, the commodities were there variously described as "Cabinet Equip.", "Used household goods", and "Special

cabinet Equip." and that seven of these twelve shipments were described as "Used household goods". Virgil Morgan, a witness produced by the appellant, testified that the commodities shipped and purported to be described in the bills of lading were in fact new kitchen cabinets, new kitchen cabinet sinks, new utility closets and new linen closets, all for installation in F.H.A. housing projects being constructed by the consignee.

It is the contention of appellant that the commodities constituting these shipments were properly described as household goods and, hence, their transportation was not violative of the injunction. Certainly, they were incidental to a sale by the consignor to the consignee. Did they constitute household goods as defined in Practices of Motor Common Carriers of Household Goods? 17 M.C.C. 467. We think they did not. Practices of Motor Common Carriers of Household Goods, 53 M.C.C. 177; Barnett Extension of Operations—Furniture, 44 M.C.C. 587; Smolowitz Ext.—Hospital and Institutional Equipment, 48 M.C.C. 80; Shapiro Extension—Shuffleboards, 49 M.C.C. 634; George B. Holman & Co., Inc., Ext.—Television Equipment, 49 M.C.C. 242; Blanchard Storage Co., Inc., Ext.—Uncrated Articles, 49 M.C.C. 351; Meier Drayage Co., Inc., Common Carrier Application, 49 M.C.C. 683; North American Van Lines, Inc., Extension—New Furniture, 49 M.C.C. 368. It is to be borne in mind that appellant's certificate of public convenience and necessity authorizes it to transport household goods as defined in Practices of Motor Common Carriers of Household Goods, 17 M.C.C. 467. Turning now to the proceeding in Practices of Motor Common Carriers of Household Goods, supra, we find the term defined by the Interstate Commerce Commission as follows:

"(a) The term 'household goods' means personal effects and property used or to be used in a dwelling when a part of the equipment or supply of such dwelling; furniture, fixtures, equipment and the property of stores, offices, museums, institutions, hospitals, or other establishments when a part of the stock, equipment, or supply of such stores, offices, museums, institutions, hospitals, or other establishments; and articles, including objects of art, displays, and exhibits, which because of their unusual nature or value require specialized handling and equipment usually employed in moving household goods."

This definition is given further consideration and clarification in Practices of Motor Common Carriers of Household Goods, 53 M.C.C. 177, where, among other things, it is said:

"Clearly, part 1 (of the definition) relates to a change in the domicile of a householder, and part 2 relates to a change in the location of a store, office, museum, institution, hospital, or other establishment. Part 3 does not necessarily relate, as do parts 1 and 2, to removals of property due to a change in the location of a householder or establishment, but rather to the transportation of articles which are of an unusual nature or value and also require the specialized handling and equipment of household-goods carriers."

In Barnett Extension of Operations—Furniture, supra, it was held that a protestant motor common carrier's authority to transport household goods does not embrace the transportation of uncrated, new or used furniture from places of auction to retail stores. In Smolowitz Ext.—Hospital and Institutional Equipment, supra, it was held that applicant's authority to transport household goods as defined in rule 1(a) does not include authority to transport uncrated new furniture and new hotel and hospital furnishings from the seller's warehouse in Brooklyn, N. Y., to its warehouse in Washington, D. C., or from the warehouse to hospitals or hotels. In Shapiro Extension—Shuffleboards, su-

pra, it was held that uncrated table shuffleboards from manufacturers to clubs, bars, hotels, stores, and distributors are not embraced in the definition of household goods in rule 1(a) and that the applicant's authority in respect of household goods does not include such a movement. In George B. Holman & Co., Inc., Ext.—Television Equipment, supra, it was held that authority to transport household goods as defined in rule 1(a) does not include the transportation of television receiving sets from manufacturer to dealer, distributor, home, restaurant, or club, or of television transmitting equipment from manufacturer to places of television stations, sport events, or other events of public interest or to a place of maintenance. In Blanchard Storage Co., Inc., Ext.—Uncrated Articles, supra, it was held that uncrated photographic machinery and equipment which are transported from a manufacturer or its agents to users thereof on a rental basis, and of uncrated new steel office furniture from manufacturer to customers, branches, retail stores, or dealers, and of uncrated scientific equipment from manufacturer to the government, are not household goods within the definition contained in rule 1(a). In Meier Drayage Co., Inc., Common Carrier Application, supra, it was held that the transportation of uncrated stoves, washing machines, mechanical ironers, refrigerators, carpets, rugs, draperies, and other articles of new household furniture, household furnishings, and household appliances from retail stores to homes was not a part of household goods moving. In North American Van Lines, Inc., Extension— New Furniture, supra, it was held that:

"We do not construe the definition of household goods in class (1) as authorizing a carrier, holding authority to transport household goods, to transport from a factory or a store to the dwelling of a householder, property which the householder has purchased with the intent to use in his dwelling, unless such transportation is performed at the request of the householder and as an incident of a move by the householder from one domicile to another. Clearly, it was not intended by the definition in class (1) to allow ordinary retail deliveries of new furniture by household-goods carriers. The requirement that the service be performed at the instance of the householder, although not specifically stated, is clearly implied."

The Interstate Commerce Commission, the body charged with the administration of the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq., has defined the term "household goods" and has prescribed certain rules and regulations governing the practices of motor common carriers engaged in the transportation of household goods in interstate commerce. Its decisions on these matters are entitled to great weight and should not be overturned except for controlling reasons. Noble v. United States, 319 U.S. 88, 63 S.Ct. 950, 87 L. Ed. 1277; United States v. American Trucking Associations, 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345; I. C. C. v. New York, N. H. & H. R. Co., 287 U.S. 178, 53 S.Ct. 106, 77 L.Ed. 248; N. Y. Central Securities Co. v. United States, 287 U.S. 12, 53 S.Ct. 45, 77 L.Ed. 138. Manifestly, the commodities here transported do not come within the definition of household goods within the intent of the Interstate Commerce Act and rules and regulations issued thereunder, unless, as contended by appellant, they are of such a character as to require specialized handling because of their unusual nature or value. In this connection it is to be observed that the court found they were "not of such unusual nature or value so as to require the specialized handling and equipment usually employed in moving household goods". If this is a proper finding of fact it is presumptively correct and should not be set aside unless clearly erroneous. Rule 52 (a), Federal Rules of Civil Procedure, 28 U.S.C.A. It is, however, contended by appellant that this is not a finding of fact but a conclusion of law based upon

undisputed evidence and that it is clearly erroneous as a matter of law. We are of the view that the finding may well be considered a mixed finding of fact and conclusion of law. We, however, think it is correct both as a finding of fact and conclusion of law based on the evidence in this case. In support of the contention that the commodities involved in the instant case required specialized handling there was testimony that the consignee requested that the kitchen cabinets be shipped uncrated, that the consignee desired the kitchen cabinets be delivered into the kitchens in which they were to be installed, that specialized handling was necessary to meet production requirements, that the cabinets were manufactured by the consignor in accordance with specifications of the consignee and that furniture pads were used to prevent scratching and damage. These facts and circumstances were, we think, not sufficient under the authorities to warrant classifying these shipments as those requiring specialized handling. Practices of Motor Common Carriers of Household Goods, 53 M.C.C. 177; Blanchard Storage Co., Inc., Ext.—Uncrated Articles, supra; Meier Drayage Co., Inc., Common Carrier Application, supra; North American Van Lines, Inc., Extension—New Furniture, supra; North American Van Lines, Inc., Extension—Nappance, Ind., MC–107012 Sub. 17 (unreported). There was testimony that the top cost in a shipment would be $70.00 or $80.00, including the counter top and bowl. On the basis of the testimony the cabinets here were not of a delicate or unusual nature and were not of considerable or unusual value.

■ It remains to consider the contention of appellant that even though the transportation involved may have been beyond the scope of its authorized certificate, it was not in violation of the terms of the injunction. In support of this contention it is urged that the evidence fails to disclose in what particular the appellant violated the terms of the injunction and that the findings of fact, judgment and order of the court do not point out wherein the appellant was in contempt.

The injunction enjoined and restrained appellant from transporting in interstate commerce new furniture, shuffleboards, coin-operated roll-down machines, cafeteria and kitchen equipment, calculating machines and cash registers, or any other similar article or articles when incidental to the sale or consignment from the consignor to the consignee. The information charged that the appellant with full knowledge of the injunction transported in interstate commerce "certain kitchen cabinets, utility closets, and linen closets" from a consignor in Louisville, Kentucky to a consignee in Cincinnati Ohio, and "certain kitchen cabinets, utility closets, and linen closets, including new bases, wall cabinets, and linen closet frames" from the same consignor in Louisville, Kentucky to the same consignee in Dayton, Ohio. It is conceded that the transportation was incidental to a sale from the consignor to the consignee. In the final analysis the only indefiniteness in the description of property as described in the injunction is contained in the words "or any other similar article or articles". The court heard all the evidence produced, both by the government and the appellant, and there can scarcely be said to be any material dispute as to what property was transported. The words "or any other similar article or articles" follow the words "new furniture, shuffleboards, coin-operated roll-down machines, cafeteria and kitchen equipment, calculating machines and cash registers". The injunction specifically prohibits the transportation of "kitchen equipment * * * or any other similar article or articles". The evidence shows beyond any reasonable doubt that the kitchen cabinets here transported were destined for installation in kitchens. They were unquestionably equipment for kitchens and if not specifically named in the injunction, they were of like kind or species with those comprehended by a particular class specified therein, namely, kitchen equipment.

The contention that the court gave the injunction too broad a scope is, we think, wholly without merit and the cases relied upon in support of this contention are readily distinguished in their facts. We conclude that the evidence abundantly proved that the transportation was violative of the terms of the injunction.

We have considered all other contentions urged by appellant and think them wholly without merit. The judgment appealed from is therefore affirmed.